UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-CR-0059-CVE |
| | ) | (09-CV-0564-CVE-FHM) |
| EDUARDO CARVAJAL-MORA | ) | |
| a/k/a Eduardo Carbajal-Mora, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

On August 28, 2009, defendant Eduardo Carvajal-Mora, also known as "Eduardo Carbajal-Mora," a federal prisoner appearing pro se, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 69).  Section 2255 provides that "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or law of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

## I.

On February 12, 2008, a complaint was filed charging defendant with "knowingly and intentionally possess[ing] with the intent to distribute more than 500 grams of a mixture and substance containing a detectable amount of cocaine" on or about February 10, 2006.  Dkt. # 1. Defendant had been arrested near St. Louis, Missouri on October 24, 2007 and was facing criminal charges in the United States District Court for the Eastern District of Missouri.  He was transferred to this Court under Rule 5 of the Federal Rules of Criminal Procedure.  On March 6, 2008, the Grand Jury returned an indictment charging defendant with the same offense alleged in the

complaint.  Dkt. # 11.  Defendant retained Thomas Mortensen as his attorney[1] and made his initial appearance on March 31, 2008.  The government asked the Court to detain defendant pending trial. Defendant waived his right to a detention hearing and consented to pretrial detention.  Dkt. # 19.

Defendant filed a motion to suppress evidence gathered during his arrest on October 24, 2007, and the Court set defendant's motion for a suppression hearing on May 2, 2008.  Dkt. # 25. At the suppression hearing, the government presented the testimony of Detective Quinn Turner of the St. Louis County Police Department and Phelps County Sheriff's Department Deputy Carmelo Crivello.[2]  Turner testified that he was performing a spot check at hotels near St. Louis along Interstate 44 (I-44), because I-44 is a known drug corridor.  He talked to a clerk at a Super 8 Motel in St. Clair, Missouri and learned that one guest checked in late and paid with cash.  This prompted Turner to investigate the vehicle and the driver, and he learned that defendant was an illegal immigrant with a prior felony conviction and the Drug Enforcement Agency (DEA) was investigating defendant for possible cocaine trafficking.   Turner contacted Immigration and Customs Enforcement (ICE) Officer Jeff Othic to confirm defendant's immigration status, and he was informed that defendant was a deportable alien if Turner could confirm defendant's identity. Turner also notified DEA agent Brian Witek of his investigation, and kept in touch with Witek throughout the morning.

---

[1]     Kenneth Morgan also entered an appearance as retained counsel.  However, Mortensen represented defendant at most hearings and it is Mortensen's conduct, not Morgan's, that defendant challenges in his § 2255 motion.  The Court will refer to Mortensen as "defense counsel" throughout this Opinion and Order.

[2]     The Court offers a summary of the testimony presented at the suppression hearing to the extent this information is necessary to rule on defendant's § 2255 motion, and the facts are taken from the Court's suppression order (Dkt. # 32).

2

Around 11:15 a.m., defendant and an unknown female, later identified as Crystal Chappell, entered the vehicle and drove west on I-44.  Turner followed the vehicle from the motel, and he contacted Crivello to watch for the vehicle and initiate a traffic stop if he observed a traffic violation. Crivello was parked at mile marker 198 in a gravel median between the eastbound and westbound lanes of traffic, and was facing oncoming traffic traveling west on I-44.  Crivello observed defendant's vehicle travelling westbound on I-44 and began following the vehicle.  Crivello testified that defendant's vehicle crossed onto the shoulder of the road from the right lane.  He initiated a traffic stop based on defendant's failure to maintain a single lane, which is a traffic violation under Missouri law.  Turner had advised Crivello that defendant could be armed and dangerous, and Crivello waited for Turner to arrive before approaching defendant's vehicle.  Crivello approached the vehicle and requested defendant's driver's license.  Turner reviewed the driver's license and checked the defendant's identity, and confirmed that defendant was subject to an ICE hold and could be taken into custody.  However, before taking defendant into custody, Crivello asked for defendant's consent to search the vehicle and defendant agreed.  Crivello noticed that an airbag compartment on the driver's side appeared to be glued in place and this seemed unusual for a relatively new vehicle.  He pried open the compartment and found approximately $208,000 of United States currency rolled into bundles.

Defendant argued that Crivello lacked reasonable suspicion to initiate a traffic stop, that defendant did not voluntarily consent to the search, and that the search exceeded the scope of defendant's consent. The government argued that the currency would have been discovered during a subsequent inventory search of the vehicle, and the inevitable discovery exception to the exclusionary rule applied.  The Court found that Crivello observed a traffic violation and had

reasonable suspicion to conduct a traffic stop, and the length of the traffic stop was reasonable.  The Court rejected defendant's argument that he did not voluntarily consent to a search of his vehicle and found that he consented to a search of the entire vehicle, including any compartments.  Therefore, the Court did not suppress any evidence seized during the search.  The Court also found that defendant was a deportable alien and his vehicle would have been subject to an inventory search, and the currency would inevitably have been discovered by law enforcement officers during an inventory search.

The Grand Jury returned a superseding indictment (Dkt. # 34), adding a charge of conspiracy to violate the federal drug laws in violation of 21 U.S.C. § 846 (Count One), and realleging a charge of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (Count Two).  The case was set for jury trial on May 19, 2008 but, in light of the superseding indictment, the parties filed a joint motion to continue the jury trial.  Dkt. # 44.  The Court granted the motion to continue and reset the jury trial for June 16, 2008.

Before trial, defendant petitioned the Court to allow him to change his plea to guilty as to Count Two pursuant to a plea agreement.  Defendant pled guilty to Count Two of the superseding indictment, and the government agreed to dismiss Count One.  The plea agreement contained a waiver of appellate and post-conviction rights:[3]

> a.   The defendant waives the right to directly appeal the conviction and sentence pursuant to 28 U.S.C. § 1291 and/or 18 U.S.C. § 3742(a); and

---

[3]   The government has not invoked the waiver of defendant's post-conviction rights, and the Court may not sua sponte enforce an appellate and post-conviction waiver.  United States v. Contreras-Ramos, 457 F.3d 1144, 1145 (10th Cir. 2006) ("the waiver is waived when the government utterly neglects to invoke the waiver").  Therefore, the Court may consider defendant's claims without determining whether they are barred by the appellate and post-conviction waiver contained in the plea agreement.

4

b.      The defendant reserves the right to appeal from a sentence which exceeds the statutory maximum; and

c.      The defendant expressly acknowledges and agrees that the United States reserves all rights to appeal the defendant's sentence as set forth in 18 U.S.C. § 3742(b), and *U.S. v. Booker*, 543 U.S. 220 (2005); and

d.      The defendant waives the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver; and

e.      The defendant waives the right to have the sentence modified pursuant to 18 U.S.C. § 3582(c), except for a rule 35(b) motion filed by the Government; and

f.      The defendant waives the right to appeal the District Court's determination of the amount of restitution and the Court's subsequent order.

Dkt. # 56, at 3-4.  Defendant agreed to the entry of a criminal forfeiture judgment in the amount of $100,000.  Id. at 6.  He admitted that he possessed more than 500 grams of cocaine with intent to distribute on February 10, 2006, and he "gave the cocaine to [his] uncle, Pedro Carbajal, so that he would transport it to another person outside of Oklahoma." Id. at 8.  The parties stipulated that the amount of cocaine involved in defendant's offense was more than 5 kilograms but less than 15 kilograms and that defendant was not a leader, organizer, manager or supervisor of any criminal activity.  Id. at 15.  The government stated that defendant demonstrated acceptance of responsibility by admitting his guilt, and agreed to recommend a two-level reduction for acceptance of responsibility and file a motion for an additional reduction of one level.  Id. at 9.  Defendant also consented to removal from the United States upon completion of any sentence of imprisonment imposed by the Court.  Id. at 10.

At the change of plea hearing on May 29, 2008, counsel for the government summarized the key terms of the plea agreement and defendant agreed that the summary was accurate.  Dkt. # 76,

5

at 2-4.  Defendant acknowledged that he had read the superseding indictment and the plea agreement, reviewed the documents with his attorney, and understood both documents.  Id. at 6-7. The Court advised defendant that he faced a mandatory minimum sentence of five years and a possible maximum sentence of 40 years.  Id. at 9.  The Court informed defendant that it would take about 90 days for the preparation of a presentence investigation report (PSI) and for objections to the PSI, and defendant asked if the sentencing hearing could be held sooner.  He stated that another PSI had already been prepared in Missouri, and he asked if the Court could use the PSI that had already been prepared.  Id. at 13.  The Court told defendant that a new PSI must be prepared, but it could expedite defendant's sentencing if the probation officer assigned to his case referred to the pre-existing PSI.  Id. at 13-14.  The Court reviewed in detail with defendant the appellate and post-conviction waiver in the plea agreement, and defendant stated that he understood the rights he was giving up by executing the plea agreement.  Id. at 16-18.  The Court advised defendant of the rights he was giving up by changing his plea, including the right to a jury trial, and he stated that he freely, voluntarily, and knowingly waived certain constitutional rights by entering a guilty plea.  The Court asked defendant to explain in his own words how he committed the charged offense:

> THE DEFENDANT: On February 10, 2006, I met with my uncle, Pedro Carvajal, and I – I gave him the 5 kilograms of cocaine for him to deliver to another city outside of Oklahoma.
>
> THE COURT: Okay.  Did this occur –
>
> THE DEFENDANT: In Tulsa.
>
> THE COURT: You say it was February 10th?  You remember that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: All right.  And you say it was in Tulsa, Oklahoma?

THE DEFENDANT: Yes.

THE COURT: Okay.  The Court finds that's in the Northern District of Oklahoma. And on the date, you agree that you possessed more than 500 grams of cocaine?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you understand that you've stipulated that it was at least 5 kilograms but less than 15 kilograms?

THE DEFENDANT: Correct.

THE COURT: Okay.  And you gave it to your uncle, who was also there?

THE DEFENDANT: Right.

THE COURT: You understand that just giving it without receiving any money in return is considered distribution?

THE DEFENDANT: Yes.

THE COURT: All right.  Do you understand that cocaine is a Schedule II controlled substance under the federal statutes?

THE DEFENDANT: Yes, I do.

THE COURT: And you intended to distribute that cocaine to your uncle; correct?

THE DEFENDANT: Yes.

THE COURT: And you understood that your uncle was going to transport that cocaine outside of Tulsa, Oklahoma; and you knew at the time that you did it that what you did was illegal?

THE DEFENDANT: Yes, I did.

Id. at 24-25.  The government noted that the cocaine was hidden in a microwave and packaged to appear as a gift, and it was placed in the vehicle of another "coconspirator."  Id. at 27.  The Court again asked defendant if he wished to proceed with the change of plea and if his guilty plea was voluntary, and he stated that he "would like to plead guilty and take full responsibility."  Id.

Defendant's sentencing hearing was held on August 27, 2008.  The PSI provides the

following description of the offense conduct:

11.      On February 10, 2006, [defendant], his uncle Pedro Carbajal, and a Hispanic
         male identified as "Flacko" met at the Renaissance Hotel, Tulsa Oklahoma,
         where they loaded a gift wrapped package containing a microwave into the
         back of Pedro Carbajal's vehicle.  The microwave concealed five packages
         of cocaine powder weighing 4.9 kilograms.  The trio traveled west, in two
         separate vehicles, to a truck stop outside of Oklahoma City, Oklahoma.
         Upon reaching the truck stop, Flacko got out of the vehicle with Pedro
         Carbajal and got into the vehicle with [defendant].  The group changed
         direction and headed east on I-40.  [Defendant] and Flacko traveled in the
         lead vehicle, a 2006 Land Rover, and Pedro Carbajal followed with the
         cocaine in a 2002 Chrysler Town and Country Minivan.

12.      While traveling eastbound on I-40, Pedro Carbajal was stopped by an
         Oklahoma Highway Patrol trooper for traffic violations.  A consent search
         of his vehicle revealed the cocaine hidden in the microwave. [Defendant] and
         Flacko were not stopped and continued to their destination.

13.      In October 2007, [Defendant] was targeted by [DEA] agents in the Eastern
         District of Missouri.  On October 24, 2007, agents established surveillance
         on [defendant] at a Super 8 Hotel located near I-44 at St. Clair, Missouri.  A
         subsequent traffic stop, conducted by the Phelp's [sic] County Sheriff's
         Department, and consent search of [defendant's] vehicle revealed $208,355
         in U.S. currency secreted in place of the passenger airbag in the vehicle.

PSI, at 6.  The Court noted that the PSI stated that the offense involved 4.9 kilograms of cocaine,

but the parties stipulated in the plea agreement that the offense involved at least 5 kilograms of

cocaine.  The government agreed that the actual quantity of cocaine, rather than the stipulation,

should be used to determine the base offense level, but argued that the stipulation should be used

as a factor to support a sentence at the high end of the guideline range.  Dkt. # 68, at 3-4.  The PSI

recommended a total offense level of 27 and a criminal history category of III, and the relevant

guideline range was 87 to 108 months.  The Court sentenced defendant to 96 months imprisonment.

The Court entered a judgment and commitment on August 29, 2008 (Dkt. # 65) and an amended judgment and commitment on September 8, 2008 (Dkt. # 67). Defendant did not appeal his conviction or sentence to the Tenth Circuit Court of Appeals, and his conviction became final ten days after entry of judgment. On August 28, 2009, defendant filed a § 2255 motion raising four claims of ineffective assistance of counsel. Using either judgment and commitment as a basis to determine the finality of defendant's conviction, his § 2255 motion was filed within one year from the date his conviction became final and the motion is timely.

## II.

Defendant raises four claims of ineffective assistance of counsel: (1) his attorney was ineffective for failing to advise defendant about the possibility of a conditional guilty plea; (2) defense counsel should not have advised defendant to sign a plea agreement containing a waiver of appellate rights and defense counsel encouraged defendant to change his plea to cover his own inadequate investigation; (3) defendant relied on inaccurate or misleading information provided by defense counsel when deciding whether to change his plea; and (4) defense counsel provided inaccurate advice about the relevant conduct that could be considered at sentencing. The government responds that defense counsel was not constitutionally deficient. Even if defense counsel were deficient, the government argues, defendant has not shown prejudice and his ineffective assistance of counsel claims should be denied.

**A.**

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment significance." Thus, the prejudice prong of the Strickland test does not require that any increase in sentence must meet a standard of significance. See United States v. Horey, 333 F.3d 1185, 1187-88 (10th Cir. 2003).

10

**B.**

Defendant claims that his attorney should have advised him to enter a conditional guilty plea to preserve his right to appeal the denial of his suppression motion, and defense counsel's performance was constitutionally deficient.  Dkt. # 70, at 2-3.  The government responds that defendant does not have a guaranteed right to enter a conditional guilty plea and defense counsel's failure to negotiate a conditional guilty plea does not constitute ineffective assistance of counsel.

Under Fed. R. Civ. P. 11(a)(2), a criminal defendant can not enter a conditional plea preserving issues for appellate review without the consent of the court and the government.  If a defendant has entered a plea agreement and the plea agreement does not give defendant the right to enter a conditional plea, a defendant may not subsequently demand to receive any concessions in the plea agreement and an additional, unbargained-for, concession of a conditional plea.  See Elizalde-Adame v. United States, 56 Fed. Appx. 279, 280 (7th Cir. 2003).  When asserting that defense counsel was ineffective for failing to advise defendant of the possibility of a conditional plea, a defendant must show that he could have obtained "1) consent from the court; 2) consent from the government; 3) a writing that memorializes the conditional guilty plea; and 4) a specific written preservation of the defendant's right to appeal the adverse pretrial determination." Gould v. United States, ___ F. Supp. 2d ___, 2009 WL 3089008 (D. Mass. Sep. 29, 2009).  Conditional pleas are not commonly offered by most prosecutors, and a defendant asserting an ineffective assistance of counsel claim must show that a conditional plea was offered or would likely have been offered if the government's consent to a conditional plea was sought.  Mackins v. United States, 2009 WL 1563920 (W.D.N.C. June 1, 2009).

11

Defendant does not cite any authority supporting his argument that his attorney was constitutionally deficient for failing to negotiate a conditional plea, and it is clear that this argument is meritless.  Under Rule 11, defendant does not have the right to enter a conditional plea without the consent of the government and the court, and defense counsel's failure to negotiate a conditional plea is not per se ineffective assistance of counsel.  Even if defense counsel had advised defendant of the possibility of a conditional plea, defendant has not alleged any facts suggesting that is was likely that the government or this Court would have consented to a conditional plea.  If defendant felt strongly that he had a legitimate basis to appeal the Court's denial of his motion to suppress, he could have asked his attorney about the possibility of preserving this issue for appeal or simply declined to change his plea and preserve all issues for appeal by going to trial.  Instead, defendant admitted his guilt based on an incident separate from the vehicle search and negotiated a plea agreement to receive a reduction of his sentence for acceptance of responsibility.[4]  The Court also notes that defendant executed a petition to enter a guilty plea acknowledging that he voluntarily waived his right to appeal the denial of any pretrial motions.  See Dkt. # 55, at 3 ("By pleading guilty I understand I waive, that is, give up all pretrial motions, and can not assert any such motions before the Court or on appeal after pleading guilty.").  Defendant was on notice at the time he changed his plea that he waived his right to appeal the denial of his motion to suppress by entering a guilty plea, and the Court will not set aside his conviction due to defense counsel's alleged failure to advise defendant of the possibility of a conditional plea.

---

[4]     Unlike many criminal cases, defendant would likely have still faced a trial even if the Court had granted his motion to suppress.  The motion to suppress concerned evidence seized during the traffic stop on October 24, 2007, but the indictment charged defendant with possessing cocaine with intent to distribute on February 10, 2006.

12

## C.

Defendant argues that defense counsel was constitutionally deficient for advising defendant to sign a plea agreement containing a waiver of his appellate rights.  However, the primary basis for defendant's second ground for relief is his assertion that defense counsel did not conduct an adequate investigation into defendant's case and could not have provided competent advice concerning defendant's decision to enter a guilty plea.

Defense counsel in every criminal case has an obligation to conduct an adequate investigation into the government's case against a defendant, because "[t]he duty to investigate derives from counsel's basic function . . . to make the adversarial testing process work in the particular case." Barkell v. Crouse, 468 F.3d 684 (10th Cir. 2006) (quoting Williamson v. Ward, 110 F.3d 1508, 1514 (10th Cir. 1997)).  However, defense counsel is not ineffective for failing to investigate if defense counsel made a strategic decision not investigate an implausible or unlikely lead and the decision not to investigate was reasonable considering all of the circumstances. Strickland, 466 U.S. at 691; see also United States v. Carr, 80 F.3d 413 (10th Cir. 1996) (defense counsel's "decision not to pursue every lead provided by [the defendant] was within [defense counsel's] sphere of decision making as an attorney").

Defendant claims that defense counsel's investigation was inadequate due to his failure to investigate the following issues: (1) inconsistencies in Pedro Carbajal's statements; (2) the reliability of the government's fingerprint evidence and fingerprint expert; (3) other possible witnesses, including an uncle, who could have challenged Pedro Carbajal's credibility; (4) the veracity of statements made by an alleged government informant; (5) audiotapes of allegedly incriminating phone calls involving defendant; and (6) a contradiction between a police report and evidence

13

presented at the suppression hearing.  However, defendant does not address the fact that he pled guilty and admitted the essential elements of the offense against him, even if he has identified some weaknesses in the government's case against him.  Defendant was aware of these factual issues when he chose to plead guilty and voluntarily waived his right to test the government's evidence by means of a jury trial.  While the government's case may not have been perfect, credibility issues as to certain witnesses do not entirely undermine the government's case and defendant has not shown that it was unreasonable for defense counsel to advise defendant to change his plea based on the strength of the government's case.  Even assuming that defense counsel failed to investigate the leads cited by defendant, defendant admitted his guilt and chose not to subject the government's case to adversarial testing by means of a jury trial, and the Court finds that defense counsel was not constitutionally deficient for advising defendant to accept the plea agreement.

Defendant also argues that defense counsel was ineffective for advising defendant to sign a plea agreement containing an appellate and post-conviction waiver.  However, counsel is not automatically ineffective for advising a client to accept a plea agreement with an appellate and post-conviction waiver, as appellate waivers serve a useful purpose and are an important part of a criminal defendant's bargain with the government.  See United States v. Hahn, 359 F.3d 1315 (10th Cir. 2004); United States v. Calderon, 2007 WL 1574541 (N.D. Okla. May 29, 2007) (applying Hahn and rejecting claim that appellate waiver executed before sentencing is per se invalid).  The Court advised defendant about the rights he was giving up by signing a plea agreement with an appellate and post-conviction waiver, and specifically reviewed each right that defendant was waiving.  See Dkt. # 76, at 16-18.  Defendant stated that he understood the appellate and post-conviction waiver and voluntarily waived the appellate and post-conviction rights listed in the plea

agreement. Id. Defendant has not alleged any facts suggesting that defense counsel failed to explain the terms of the plea agreement to defendant or made any misrepresentation concerning the terms of the appellate and post-conviction waiver.  The Court finds that defense counsel was not ineffective for advising defendant to accept a plea agreement containing an appellate and post-conviction waiver, because  the mere presence of an appellate and post-conviction waiver in a plea agreement does not show that defense counsel was ineffective.

Defendant may also be claiming that defense counsel's inadequate investigation rendered his guilty plea involuntary, because defendant did not have sufficient information to enter a knowing and voluntary guilty plea.  The leads defense counsel allegedly failed to investigate concern the credibility of witnesses and purported weaknesses in the government's case.  However, defendant is not arguing that he is actually innocent, nor does he deny that he admitted the essential elements of the offense.  Even if the Court were to determine that defense counsel should have conducted a more thorough investigation, defendant knowingly and voluntarily changed his plea and he has not alleged that he would actually exercise his right to a jury trial if his conviction and sentence were vacated.  Thus, even assuming that defense counsel was ineffective, he can not establish that defense counsel's alleged failure to investigate prejudiced him and he is not entitled to relief under Strickland.

## D.

Defendant claims that defense counsel gave him inaccurate or misleading information to encourage him to change his plea, and defense counsel used "scare tactics" to "coerce" defendant to plead guilty.  Dkt. # 70, at 7-8; Dkt. # 79, at 8.  The government responds that defendant's arguments simply show that defense counsel identified the pros and cons of going to trial and

pleading guilty, and defendant has not identified any false or misleading advice allegedly provided by defense counsel.

Defendant argues that defense counsel tried to convince him to change his plea after defendant's motion to suppress was denied, and defense counsel "basically gave up after losing the suppression hearing."  Dkt. # 70, at 7.  He alleges that defense counsel refused to investigate leads defendant identified or provide defendant with copies of evidence he wished to review, and defense counsel placed too much weight on certain incriminating evidence in an attempt to encourage defendant to change his plea.  Id.  Defense counsel allegedly informed defendant that a second superseding indictment with additional charges would be filed if defendant did not accept the plea agreement, and defendant claims that defense counsel did not investigate the merits of these potential claims before advising defendant to plead guilty.  Defendant relies on United States v. Unger, 665 F.2d 251 (8th Cir. 1981), to support his argument that he is entitled to an evidentiary hearing based on his allegations that defense counsel misrepresented the evidence against defendant to induce him to change his plea.  In Unger, the Eighth Circuit found that the defendant's "credible" allegations stated a claim that her guilty plea was involuntary due to her attorney's misrepresentations about the possible severity of her sentence.  Id. at 254.  However, the defendant's attorney advised her that she would receive probation if she accepted a plea agreement and the death penalty if she declined a plea agreement, and she was ultimately sentenced to 50 years imprisonment on a kidnapping charge.  The defendant's allegations were supported by her affidavit, and the Eighth Circuit found that these credible allegations were sufficient to entitle the defendant to an evidentiary hearing on her ineffective assistance of counsel claim.  The Eighth Circuit also found that the district court erred by requiring the defendant and her co-defendant to be represented by the same attorney

after a conflict of interest arose, and remanded the case to determine if the defendant should be permitted to withdraw her plea.

The Court finds that defendant has not shown that his attorney was constitutionally deficient for encouraging him to change his plea based on the information known to defense counsel. Defendant alleges that defense counsel emphasized certain factors that would make it more difficult to prevail at trial, including defendant's criminal record, the amount of money seized, and defendant's involvement with the drugs seized in February 2006. Dkt. # 70, at 7. Defense counsel advised defendant that he would receive a sentence of imprisonment between seven and nine years if he accepted the plea agreement, but his sentence could be much higher if he proceeded to trial. Id. at 8. This advice was accurate. Defendant was sentenced to 96 months, or eight years, in prison, and his sentence would have been substantially higher if he was convicted following a trial. Unlike Unger, defense counsel did not make any misrepresentation about defendant's likely sentence if he accepted the plea agreement, and defendant's allegations about defense counsel's "scare tactics" are not credible. Defendant also renews his argument that defense counsel failed to investigate certain leads identified by defendant or provide defendant with copies of evidence. However, these allegations do not show that defense counsel provided inaccurate or misleading information to induce defendant to change his plea or that defendant was not fully informed of the consequences of pleading guilty. In addition, defendant does not allege that he would have exercised his right to a jury trial, and he cannot show any prejudice resulting from defense counsel's allegedly misleading advice.

**E.**

Defendant claims that defense counsel failed to accurately calculate the drug quantity when negotiating a stipulation as to drug quantity in the plea agreement, and defense counsel overstated the amount of cocaine involved in the case to convince defendant to change his plea.   The government responds that the Court refused to apply the parties' stipulation because it determined that defendant possessed less than 5 kilograms of cocaine, and any erroneous advice by defense counsel concerning the drug quantity did not prejudice defendant.

Defendant's argument is based on his assumption that only 2.2 kilograms were seized from Pedro Carbajal's vehicle on February 10, 2006, and defense counsel represented that defendant would be held accountable for at least five kilograms of cocaine.   Dkt. # 70, at 9.  However, defendant's allegation about the drug quantity seized on February 10, 2006 is not supported by any evidence and is contradicted by the PSI.   The PSI states that law enforcement officers found 4.9 kilograms of cocaine in a microwave in the rear of Pedro Carbajal's vehicle, and the parties agreed at defendant's sentencing hearing that Pedro Carbajal was sentenced based on the same drug quantity.   See PSI, at 6; Dkt. # 68, at 7 (defense counsel agrees with the Court that the drug quantity in Pedro Carbajal's case was identical, but Pedro Carbajal received a lesser sentence due to his lack of criminal history).   Defense counsel's estimate of five or more kilograms of cocaine was close to the actual drug quantity used to determine defendant's sentence, and it appears that defense counsel's estimate was a reasonable assessment of the evidence.   In any event, the Court applied the lower drug quantity stated in the PSI, not the parties' stipulation, and defendant was not prejudiced by his decision to stipulate to a higher drug quantity in the plea agreement.   Thus, defense counsel did not provide ineffective assistance by negotiating a stipulation as to drug quantity in the plea

18

agreement  and, even if defense counsel was ineffective, the inclusion of the stipulation did not prejudice defendant at his sentencing hearing.

**IT IS THEREFORE ORDERED** that defendant's Motion Under U.S.C. § 2255 to Vacate, Set Aside or Correct a Sentence by a Person in Federal Custody (Dkt. # 69) is **denied**.  A separate judgment is entered herewith.

**DATED** this 21st day of December, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT